## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA,

    v.

GEOFFREY SHAPIRO.

No. 3:20-cr-45 (VAB)

## RULING AND ORDER ON MOTION FOR ACQUITTAL

Geoffrey Shapiro ("Defendant") was charged in a two-count indictment alleging that he engaged in interference with commerce by robbery in violation of 18 U.S.C. § 1951 ("Count One") and bank robbery in violation of 18 U.S.C. §§ 2113(a) and (d) ("Count Two"). *See* Indictment, ECF No. 1 (Mar. 10, 2020) ("Indictment").

After two days of the Government presenting its case-in-chief, Mr. Shapiro moved for acquittal. *See* Mot. for Acquittal, ECF No. 199 (Jan. 24, 2025). Mr. Shapiro subsequently filed a memorandum in support of his motion for acquittal. Mem. in Supp. of Mot. for Acquittal, ECF No. 201 (Feb. 7, 2025) ("Mot.").

For the following reasons, the motion for acquittal is **DENIED**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  Trial Proceedings

At trial, the Government presented the following evidence.

#### 1.  The Dunkin' Donuts Robbery

On February 9, 2020, a suspect robbed a Dunkin' Donuts in Simsbury using a firearm. Transcript, January 8, 2025, ECF No. 204 at 20–21, 23 (Feb. 27, 2025) ("Jan. 8, 2025 Tr."). Video surveillance of the robbery showed the suspect was a white man with dark hair who was wearing a fur-lined jacket and a Boston Red Sox baseball hat. Jan. 8, 2025 Tr. at 25, 27. At the time, the

suspect was the only customer in the Dunkin' Donuts, and only he and two teenage employees were in the store. Transcript, January 9, 2025, ECF No. 205 at 23–25 ("Jan. 9, 2025 Tr."); Jan. 8, 2025 Tr. at 178–179. After asking to purchase items and waiting for the cashier to open the cash register, the suspect pulled out a small, black, semiautomatic handgun with his right hand from his jacket pocket. Jan. 8, 2025 Tr. at 23, 28–29. The suspect placed the gun on the counter, sideways, pointed at the cashier. Jan. 9, 2025 Tr. at 23. The suspect told the cashier to give him the money in the register. Jan. 9, 2025 Tr. at 23.The cashier then handed the suspect approximately $300 in cash from the register. Jan. 8, 2025 Tr. 23.

2. *The Webster Bank Robbery*

On February 21, 2020, a suspect robbed a Webster Bank in Glastonbury. Jan. 8, 2025 Tr. at 45. Video surveillance showed the suspect was a tall, thin, white man with brown hair wearing a jacket with a fur-lined hood and a black baseball hat. Jan. 8, 2025 Tr. at 50–51. Several other customers were in the bank at the time. *See* Gov. Exhibit 305. After the suspect handed a note to the bank teller, Gina Leogrande, Ms. Leogrande handed him money from her area. Jan. 8, 2025 Tr. at 51. While Ms. Leogrande could not recall the exact language of the note, in her statement to the police the day of the robbery, she stated that the note the suspect handed her contained information about the suspect possessing a gun. Jan. 9, 2025 Tr. at 17. At trial, she testified that "it stuck out at me that I was being robbed and that he might have a gun, or he said he had a gun." Jan. 9, 2025 Tr. at 15; *see also* Jan. 9, 2025 Tr. at 20 ("Q: He handed you the note? A. Yes. Q. The note referenced a gun? A. Yes"). The surveillance video did not display a firearm, and no witnesses reported seeing a firearm. Jan. 8, 2025 Tr. at 103; Jan. 9, 2025 Tr. at 20.

###### 3.  *The February 21, 2020 Search*

That same day, using surveillance videos from surrounding businesses and a police dog tracing the suspect's scent, police identified what they believed to be the vehicle the suspect used to leave the scene. *See* Jan. 8, 2025 Tr. at 56–60, 64, 81, 122–27. The vehicle was a Kia Soul. Jan. 8, 2025 Tr. at 67. After entering the vehicle's license plate number into a statewide database, officers determined it was registered to Mr. Shapiro's mother. Jan. 8, 2025 Tr. at 70–71. After determining she had an adult son, Mr. Shapiro, and viewing his publicly available social media photograph, officers obtained Mr. Shapiro's address and went to his residence. Jan. 8, 2025 Tr. at 71–73.

While at the residence, officers observed the Kia Soul with a license plate matching that of the suspect's vehicle. Jan. 8, 2025 Tr. at 74, 81. Mr. Shapiro was getting out of the vehicle at the time, and was arrested. Jan. 8, 2025 Tr. at  74–76.

While he was arrested, Mr. Shapiro had a backpack containing, among other items, a sum of cash. Jan. 8, 2025 Tr. at 78–79. Officers also searched his residence, where they found a Red Sox baseball cap similar to the hat worn by the suspect in the Dunkin' Donuts robbery. Jan. 8, 2025 Tr. at 80. Inside the vehicle, officers found loose cash, a fur-lined jacket similar to that worn by the suspect in the robberies, as well as a dark hat similar to that worn during the Webster Bank robbery. Jan. 8, 2025 Tr. at 83–84, 88, 90. Inside the top right pocket of the fur-lined jacket was a small pistol, a yellow money band with the Ms. Leogrande's initials, and cash. Jan. 8, 2025 Tr. at 84–87; Jan. 9, 2025 Tr. at 16. A note was also found inside the jacket that read, in part, "It is not personal. I have a gun and don't want to use it," and "Stay calm, it's a robbery." Jan. 8, 2025 Tr. at 87, 115.

### B. Procedural History

On March 10, 2020, a grand jury returned an indictment charging Mr. Shapiro with interference with commerce by robbery in violation of 18 U.S.C. § 1951 and bank robbery in violation of 18 U.S.C. §§ 2113(a) and (d). Indictment.

On April 28, 2020, Mr. Shapiro appeared for an arraignment before Judge Stefan R. Underhill. Min. Entry, ECF No. 8. He pled not guilty, and the Court ordered that he be detained. *Id.*

On June 5, 2020, Mr. Shapiro was released on bond contingent on his compliance with certain conditions of release. *See* Order, ECF No. 12.

Jury selection took place on January 7, 2025. Min. Entry, ECF No. 191 (Jan. 7, 2025). Trial began on January 8, 2025. Min. Entry, ECF No. 192 (Jan. 8, 2025).

On January 9, 2025, the Government rested. Min. Entry, ECF No. 194 (Jan. 9, 2025).

On January 10, 2025, the jury returned a guilty verdict as to both counts. Jury Verdict, ECF No. 197 ("Verdict"); *see also* Min. Entry, ECF No. 196 (Jan. 10, 2025).

On January 24, 2025, Mr. Shapiro filed a motion for acquittal. Mot. for Acquittal, ECF No. 199.

On February 7, 2025, Mr. Shapiro filed a memorandum in support of his motion for acquittal. Mot.

On February 28, 2025, the Government filed its opposition to Mr. Shapiro's motion for acquittal. Mem. in Opp'n, ECF No. 207 ("Opp'n").

## II.    STANDARD OF REVIEW

When reviewing a motion for judgment of acquittal, courts must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could

have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).

"A court may enter a judgment of acquittal only if the evidence that the defendant committed the crime alleged is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." *United States v. Facen*, 812 F.3d 280, 286 (2d Cir. 2016) (alteration and internal quotation marks omitted) (quoting *United States v. Guadagna*, 183 F.3d 122, 130 (2d Cir. 1999)). A defendant challenging the sufficiency of the evidence thus "bears a heavy burden." *United States v. Si Lu Tian*, 339 F.3d 143, 150 (2d Cir. 2003) (internal quotation marks omitted).

"[C]ourts must be careful to avoid usurping the role of the jury when confronted with a motion for acquittal." *United States v. Jackson,* 335 F.3d 170, 180 (2d Cir. 2003). Under this standard, the court "may not usurp the role of the jury by substituting its own determination of the weight of the evidence and the reasonable inferences to be drawn for that of the jury." *United States v. Heras*, 609 F.3d 101, 105 (2d Cir. 2010) (quoting *United States v. MacPherson*, 424 F.3d 183, 187 (2d Cir. 2005)). A court must "defer to the jury[ the] assessment of witness credibility and . . . resolution of conflicting testimony." *United States v. Bala*, 236 F.3d 87, 93–94 (2d Cir. 2000). In sum, "[t]he government's case need not exclude every possible hypothesis of innocence," *United States v. Martinez,* 54 F.3d 1040, 1042–43 (2d Cir. 1995) (internal quotation marks omitted), and where "either of the two results, a reasonable doubt or no reasonable doubt, is fairly possible, [the court] must let the jury decide the matter," *Guadagna*, 183 F.3d at 129 (internal citation and quotation marks omitted) (alteration in original).

At the same time, the court must be mindful of its responsibility to protect the defendants' Fifth Amendment rights. *See, e.g.*, *United States v. Valle*, 807 F.3d 508, 513 (2d Cir. 2015). If courts "are to be faithful to the constitutional requirement that no person may be convicted unless

the Government has proven guilt beyond a reasonable doubt, we must take seriously our obligation

to assess the record to determine . . . whether a jury could *reasonably* find guilt beyond a reasonable

doubt." *Id.* at 515 (alteration in original) (quoting *United States v. Clark*, 740 F.3d 808, 811 (2d

Cir. 2014)). In particular, "specious inferences are not indulged, because it would not satisfy the

Constitution to have a jury determine that the defendant is *probably* guilty. If the evidence viewed

in the light most favorable to the prosecution gives equal or nearly equal circumstantial support to

a theory of guilt and a theory of innocence, then a reasonable jury must necessarily entertain a

reasonable doubt." *Id.* (quoting *United States v. Lorenzo*, 534 F.3d 153, 159 (2d Cir. 2008)).

## III.    DISCUSSION

Under 18 U.S.C. § 2113(d),

> Whoever, in committing, or in attempting to commit, [bank robbery,
> as defined in subsections (a) and (b) of the statute)], assaults any
> person, or puts in jeopardy the life of any person by the use of a
> dangerous weapon or device, shall be fined under this title or
> imprisoned not more than twenty-five years, or both.

At trial, the jury found Mr. Shapiro guilty of Count One, which charged him with

interference with commerce by robbery in violation of 18 U.S.C. § 1951, and Count Two, which

charged him with bank robbery of 18 U.S.C. §§ 2113(a) and (d). *See* Verdict. As to Count Two,

the jury found that Mr. Shapiro was guilty of "armed" bank robbery rather than the lesser included

offense of unarmed bank robbery. *See id.*

Mr. Shapiro does not challenge his conviction for Count One, nor does he challenge the

sufficiency of the evidence to find him guilty of unarmed bank robbery. Rather, he moves for

acquittal on his conviction for "armed" bank robbery, and argues that "[n]o rational juror could

find the government proved beyond a reasonable doubt that [he] 'used' a dangerous weapon during

the Webster Bank robbery." Mot. at 5. Mr. Shapiro argues that the surveillance videos of the

robbery did not depict Mr. Shapiro "reach for, brandish, or display—let alone 'actually us[e]'— a

gun," and no witnesses reported seeing a gun. *Id.* at 5–6. Mr. Shapiro further argues that inferring Mr. Shapiro's actual possession of a gun from the fact (1) that Mr. Shapiro referred to a gun during the Webster Bank robbery and (2) that the gun used during the Dunkin' Donuts robbery was found in his jacket pocket hours after the bank robbery is impermissible speculation. *See id.* at 7. Finally, he argues that the bank note indicating that he had a gun is insufficient to infer his possession of a gun, as "the additional evidence of possession does not rise to the level of evidence in" similar cases. *Id.* at 9 (citing *United States v. Ray*, 21 F.3d 1134, 1141 (D.C. Cir. 1994); *United States v. Levi*, 45 F.3d 453, 457 (D.C. Cir. 1995); *and United States v. Wolfe*, 245 F.3d 257, 263 (3d Cir. 2001)).

In response, the Government argues that "just the note alone would be sufficient evidence to sustain the armed robbery conviction—even if there was no additional evidence— because the jury could reasonably infer that he did have a gun based on his own words conveying actual possession and an intent to use the firearm." Opp'n at 4. The Government also argues that additional evidence allowed a reasonable juror to infer that Mr. Shapiro possessed a gun, including: (1) that Mr. Shapiro committed an armed robbery approximately 12 days before the Webster Bank robbery, (2) that investigators located a firearm in the right-hand pocket of the jacket Mr. Shapiro wore during both robberies; (3) that the firearm was small enough to be concealed within the right-hand pocket of the jacket. *Id.* at 4–5.

The Court agrees.

While the Second Circuit has not addressed the issue of whether a defendant's threat to use a gun may support the inference that he is in actual possession of a gun, as the Third Circuit noted in *United States v. Wolfe*, "other Courts of Appeal that have wrestled with this issue [are in agreement] that, when a robber says he has a gun and that he will use it, a jury may reasonably

infer that he did have a gun." 245 F.3d at 262–63; *see also Ray*, 21 F.3d at 1141 ("If a robber enters a bank with a firearm, even a concealed one, he 'uses' it when he threatens, as a jury could find Ray did, to kill someone with it."); *Levi*, 45 F.3d at 456 ("A bank robber who does not display an ostensibly dangerous weapon or device, however, can be found guilty of aggravated bank robbery only if the evidence establishes both that he had a concealed weapon and that he used it in the course of the robbery by threatening someone with it (whether by word or by deed)."); *United States v. Ferguson*, 211 F.3d 878, 884 (5th Cir. 2000) (where defendant "informed the bank tellers that he possessed a weapon," he used a weapon in other robberies, and the police found a firearm at his apartment after one robbery, concluding "[the defendant's] own statements and this additional inculpatory evidence is enough for a rational jury to have determined that [he] possessed a weapon during the . . . bank robberies [where he did not display the weapon].").

Here, the jury was properly instructed that it must find that Mr. Shapiro actually possessed the weapon and referred to the weapon during the robbery to find him guilty of armed bank robbery, and there was sufficient evidence for a reasonable juror to conclude that Mr. Shapiro did in fact possess a weapon and threaten to use it at Webster Bank.

The jury was instructed that, in determining whether Mr. Shapiro used a dangerous weapon during the commission of the bank robbery,

> [If] Mr. Shapiro referred to a weapon during the commission of the offense and actually possessed such weapon, that is also sufficient to constitute use of a weapon. However, if Mr. Shapiro referred to a weapon during the offense but did not actually possess such weapon, that is not sufficient to constitute use of a weapon. Likewise, if he possessed the weapon but kept it concealed and did not brandish or display or refer to it during the commission of the offense, that is also not sufficient to constitute use of a weapon.

Jan. 9, 2025 Tr. at 91; *see Levi*, 45 F.3d at 456 (jury instruction "was not clearly erroneous" where it "suggested that for the defendant to have used a concealed weapon he must have had a concealed weapon."); *cf. Wolfe*, 245 F.3d at 263–64 ("By instructing the jury that they could convict based

8

solely on the teller's reasonable belief that Wolfe was armed, the District Court deviated from the correct legal rule when charging the jury and committed clear error.").

Likewise, in their closing arguments, the parties emphasized to the jury that they must find that Mr. Shapiro actually possessed a weapon, and did not merely refer to it. *See* Jan. 9, 2025 Tr. at 104 ("[I]f Mr. Shapiro referred to a weapon during the commission of the offense, and actually possessed a weapon, referred to it and actually possessed a weapon, two different things referred to, and actually possessed a weapon that is sufficient to constitute use of a weapon."); Jan. 9, 2025 Tr. at 109 ("If the person referred to a weapon but did not actually possess such weapon, that is not use of a weapon. I want to say that again. If a person referred to a weapon but did not actually possess such weapon, that does not constitute use of a weapon under the law.").

As a result, the jury was properly instructed that Mr. Shapiro's threat to use a gun alone was insufficient to find him guilty of armed bank robbery, if the jury did not find that he actually possessed a gun during the robbery. *See Levi*, 45 F.3d at 456 ("[I]n their closing arguments, counsel for both sides repeatedly focused the jury's attention upon the question whether the defendant actually had a gun during the commission of the robberies. . . Thus, the only message to the jury, . . ., was that in order for Levi to be guilty of aggravated bank robbery, he must have had a weapon with him during the bank robbery.").

As for the evidence presented at trial, Mr. Shapiro handed the bank teller a note informing her that he had a gun. *See* Jan. 9, 2025 Tr. at 20 ("Q: He handed you the note? A. Yes. Q. The note referenced a gun? A. Yes"); Jan. 8, 2025 Tr. at 87, 115 (discussing note found in Mr. Shapiro's belongings saying, "I have a gun and don't want to use it[.]") Moreover, hours after the robbery, investigators found a gun located in the right pocket of the jacket Mr. Shapiro wore during the Webster Bank robbery, Jan. 8, 2025 Tr. at 84–85, and less than two weeks before Mr. Shapiro

pulled a gun out of the pocket of that same jacket during the Dunkin' Donuts robbery, *see* Jan. 8, 2025 Tr. at 28; Jan. 9, 2025 Tr. at 23.

While "specious inferences are not indulged," *Lorenzo*, 534 F.3d at 159 (citation omitted), and Mr. Shapiro offers alternative inferences that the jury may draw, *see* Mot. at 7 ("As time elapses between the Dunkin' Donuts robbery and the Webster Bank robbery, the inference of a similar pattern between the robberies becomes increasingly less viable."); *id.* at 8 ("Based on his awkward use of the gun during the Dunkin' Donuts robbery, it is equally, if not more plausible, to conclude that possessing the gun made him uncomfortable, so at Webster Bank he used a note instead"), the Court must "defer to the jury's determination of the weight of the evidence and the credibility of the witnesses, and to the jury's choice of the competing inferences that can be drawn from the evidence."[1] *United States v. Reifler*, 446 F.3d 65, 94 (2d Cir. 2006) (citation omitted); *cf. Ray*, 21 F.3d at 1141 ("As to the evidence, there was proof that Ray possessed a firearm each time he robbed the bank.").

Here, viewing the evidence "in the light most favorable to the government and [drawing] all permissible inferences . . . in its favor," Mr. Shapiro's informing the bank teller that he had a gun, and a gun subsequently being found in his jacket pocket hours later with items from the robbery, along with his prior use of a gun concealed in the pocket of the same jacket in another robbery weeks earlier, is sufficient evidence "to convince any rational trier of fact," *Martinez,* 54 F.3d at 1042 (internal citations omitted), that Mr. Shapiro actually possessed a gun and "use[d]" it during the Webster Bank robbery. *See Wolfe*, 245 F.3d at 262 ("While Wolfe's threats to shoot are not, in and of themselves, a dangerous device, these same threats may be considered by a jury as

---

[1] In addition, the jury was instructed that "[a]n inference is not a suspicion or a guess, it is a reasoned, logical conclusion that a disputed fact exists on the basis of another fact that you know exists" and that "whether based upon direct or circumstantial evidence or upon the logical, reasonable inferences drawn from such evidence, you must be satisfied of the defendant's gill [sic] beyond a reasonable doubt before you may convict him." Jan. 9, 2025 Tr. at 72.

relevant evidence on the issue of whether Wolfe actually possessed a weapon when he robbed the bank."); *Ferguson*, 211 F.3d at 884 (sufficient evidence to conclude defendant possessed a weapon where he "informed the bank tellers that he possessed a weapon," used a weapon in other robberies, and the police found a firearm at his apartment after one robbery); *see also United States v. Jones*, 84 F.3d 1206, 1211 (9th Cir. 1996), *cert denied*, 519 U.S. 973 (1996) ("Here, Jones claimed to have a gun during the robbery, *and* a gun was later found in his possession among the other items of the robbery. We hold this evidence is sufficient to support the inference that Jones possessed the gun during the robbery." (emphasis in original)). [2]

Accordingly, Mr. Shapiro fails to meet his "heavy burden" in establishing the evidence was insufficient to support his conviction, and his motion for acquittal is denied. *See Si Lu Tian*, 339 F.3d at 150.

## IV.    CONCLUSION

For the foregoing reasons, the motion for acquittal is **DENIED**.

**SO ORDERED** at New Haven, Connecticut, this 1st day of August, 2025.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE

---

[2] Although Mr. Shapiro argues that, unlike the defendants in *Ray*, *Levi*, and *Wolfe*, he did not threaten to harm anyone with the gun or gesture towards it, a reasonable juror could conclude that his informing the teller that he had a gun is sufficient to constitute "use" of a weapon. *See Ferguson*, 211 F.3d at 884 (sufficient evidence where defendant said "I have a pistol in my pocket and don't make me use it" and "don't make me have to use this"); *see also Ray*, 21 F.3d at 1141 ("A robber with a loaded gun tucked in his pocket places lives at risk because of the prospect that, should the need or impulse arise, he will commit murder. He is thus more dangerous, far more dangerous, than a robber who is unarmed. . . . But lives are also put in jeopardy when a robber walks into the bank with a loaded gun concealed on his person and, in effect, verbally brandishes it. . . . We therefore hold that if a defendant has the capacity to murder, if he possesses a firearm or some other device capable of killing, during the commission of the robbery, and threatens someone with it, he has used that weapon or device to put lives in jeopardy and is therefore guilty of violating § 2113(d)").